May v. Crawford.

MAY et al., Appellants, v. CRAWFORD et al.

Division One, June 14, 1899.

1. **Contract:** BREACH: LIQUIDATED DAMAGES. The contract under which one mercantile company called the "Famous" sold to another a part of its stock of goods, stipulated "in the penal sum of $5,000" "as liquidated damages, in lieu of all other damages," that the purchasing company would not advertise the goods as the "Famous stock" any further than to include the goods actually bought. *Held*, that this contract presented a case of liquidated damages, in case of a breach, and fixed the selling company's compensation for such breach at $5,000—any attempt to ascertain the actual damage being difficult or vain, and the purpose of the contract on plaintiffs' part being to sell to rival merchants certain kinds of their stock of goods and to remain in business in selling much the larger part of the stock.

May v. Crawford.

2. ————: ————: ————: RETRIAL: LAW OF CASE: FACTS. This court having on a prior appeal held that the sum of $5,000 mentioned in the contract must be considered as liquidated damages and not as a penalty, that holding became the law of the case, and was not open to question in the trial court, whether in the opinion of that court that decision was right or wrong. But as to questions of fact, the case is to be treated on retrial as if there had never been a trial. And if the facts on the trial anew present a different case, the trial court will be bound by the former decision of the appellate court only so far as it is applicable to the new state of facts.

3. ————: ————: ————: ADVERTISEMENTS. Where the suit is for a specific sum as liquidated damages, for the breach of a provision in a contract of sale which prohibited the defendants from advertising certain goods as having been bought from plaintiffs, it is not admissible for defendants to show that plaintiffs had advertised the sale to defendants of certain parts of their goods only, but were still in business as to the remaining departments, because such evidence could not reduce plaintiffs' recovery, nor could it defeat it entirely.

4. ————: ————: QUESTION FOR JURY. Where the evidence is uncontradicted that there has been a breach of the contract, and the witnesses are not impeached, and on a former appeal this court had held that substantially the same evidence constituted a breach, the question of whether or not there had been a breach ought not to be submitted to the jury.

5. ————: ————: INSTRUCTIONS: WHOLE CASE. Where the petition alleges the breach of a contract in two particulars, and plaintiffs direct all their testimony to show that it was violated in one feature, and defendant undertakes to show that it was not broken as to the other, an instruction that submits only defendant's feature to the jury is faulty, misleading and prejudicial.

6. ————: ————: ————: PENALTY OR LIQUIDATED DAMAGES: NOT FOR JURY. Whether or not a contract is for a penalty or liquidated damages, is a question of law, to be decided by the court. And hence an instruction that told the jury, in the event they found that there had been a breach, to find for plaintiffs in the sum of $5,000 if plaintiffs had suffered material and substantial damage, but to give them only one cent if they found they had not, in effect told the jury to give plaintiffs one cent if they found the contract was for a penalty or $5,000 if it was for liquidated damages, and, therefore, was erroneous.

7. ————: ————: ————: RULES OF INTERPRETATION. In determining whether a contract provides for a penalty or liquidated damages in case of a breach the intention of the parties and the subject-matter are the controlling guides. If from the nature of the contract

the damages can not be calculated with any degree of certainty, or any attempt to get at the actual damages would be difficult if not vain, or if the exact damage is not susceptible of definite ascertainment, the courts will construe it to be liquidated damages. And tested by this rule it is held that a contract which fixed plaintiffs' damages at $5,000 in case defendants advertised the goods sold to them contrary to stipulated terms, and thereby made it appear that they had bought more of plaintiffs' stock than they really had, provided for liquidated damages.

*Appeal from St. Louis City Circuit Court.*—Hon. Leroy B. Valliant, Judge.

Reversed and remanded (*with directions*).

R. E. Rombauer and Chas. W. Bates for appellants.

(1) Where a judgment is reversed and the cause is remanded, the rulings of the appellate court become the law for the retrial of the cause. State v. Newkirk, 49 Mo. 472; Gamble v. Gibson, 83 Mo. 290; Coquard v. Prendergast, 47 Mo. App. 243; State ex rel. v. St. Louis Circuit Court, 41 Mo. 574; Hurck v. Erskine, 50 Mo. 110; Treadway v. Johnson, 39 Mo. App. 176. The Supreme Court in this case decided that the sum of five thousand dollars, under the facts shown in evidence, was liquidated damages, and the trial court erred by not following that ruling. May v. Crawford, 142 Mo. 390. (2) Whether a certain sum mentioned in a contract should be treated as a penalty or as liquidated damages, is a question of law and not a question of fact. Moore v. Platte County, 8 Mo. 467; Gower v. Saltmarsh, 11 Mo. 271; Hempler v. Schneider, 17 Mo. 528; Basye v. Ambrose, 28 Mo. 39; Walker v. Engler, 30 Mo. 130; Hammer v. Breidenbach, 31 Mo. 49; Morse v. Rathburn, 42 Mo. 594; Hamaker v. Schroers, 49 Mo. 406; Cochrane v. Railroad, 113 Mo. 359; May v. Crawford, 142 Mo. 390. The Supreme Court in declaring upon the first appeal that such sum constituted liquidated damages, was in harmony with adjudications

in other States. Tode v. Gross, 127 N. Y. 481; Kelsoe v. Reid, 145 Pa. St. 606; Cushing v. Drew, 97 Mass. 455; Sanders v. Carter, 91 Ga. 450. (3) It was error to submit questions of law to the jury. Carroll v. Campbell, 110 Mo. 571; Brannock v. Elmore, 114 Mo. 64; Woods v. Campbell, 125 Mo. 573. Under this rule the instruction to the jury given by the court of its own motion was error, because it submitted to the jury the construction of the contract sued on, and the construction of the printed advertisements constituting the breach of said contract, and submitted to them the legal effect of the evidence. Young v. Byrd, 124 Mo. 598; Hunt v. Railroad, 75 Mo. 255; Blakely v. Benneke, 59 Mo. 195; New Madrid Co. v. Phillips, 125 Mo. 66. (4) The court erred in permitting one of the defendants, Dugald Crawford, to testify that defendants had not advertised for sale any other articles as Famous stock than those which defendants bought. Hurt v. Railroad, 94 Mo. 260; Madden v. Railroad, 50 Mo. App. 673; Mulherin v. Simpson, 124 Mo. 618.

W. B. Homer for respondents.

(1) There was no error in submitting the question of breach of the contract under the instruction drawn by the court. The advertisements offered in evidence by the plaintiff were simply the foundation of an inference of a fact, which was to be determined by the trier of facts, taking into consideration not only the documents themselves but the circumstances surrounding the facts as well, and all the evidence which was offered in the case, whether oral or written. Primm v. Haren, 27 Mo. 205; Wilson v. Board of Education, 63 Mo. 142; Mantz v. Maguire, 52 Mo. App. 146; Bass v. Jacobs, 63 Mo. App. 396; Blanke v. Dunnermann, 67 Mo. App. 596; McGinness v. Knapp, 109 Mo. 149; Wagner v. Printing Co., 45 Mo. App. 6; Walker v. Hoeffner, 54 Mo. App. 560. (2) The court did not err in submitting the question to the jury whether or not there was any material or substantial

damage.   In a case where the plaintiff can show no damage or only nominal damages the amount stated will be treated as a penalty. May v. Crawford, 142 Mo. 390; Hathaway v. Lynn, 75 Wis. 186; Quinn v. U. S., 9 Otto 30; Eva v. McMahon, 77 Cal. 467; Bignall v. Gould, 119 U. S. 498.   (3)   It may be stated as a general rule of application, that a stipulation for the payment of a specified sum, on the breach of a contract, in which it is contained, is to be treated as a penalty rather than as liquidated damages, if the intention of the parties as to its effect appears to be at all doubtful, or is of equivocal interpretation.   Moore v. Platte Co., 8 Mo. 473; Tinkham v. Satori, 44 Mo. App. 663; Wilson v. Mayor of Baltimore, 83 Md. 203; Smith v. Brown, 164 Mass. 585; Smith v. Wedge-write, 74 Me. 460; Foley v. McKeegan, 4 Ia. 6; Goodyear v. Selz, 157 Ill. 191; Burrill v. Daggett, 77 Me, 545; Smith v. Wainwright, 25 Vt. 97; Lansing v. Dodd, 45 N. J. L. 525; Wilhelm v. Eaves, 21 Or. 199; Cushing v. Drew, 97 Mass. 446; Bagley v. Peddie, 16 N. Y. 469; Condon v. Kemper, 47 Kan. 130; Shute v. Taylor, 5 Met. 61; Hoag v. McGinnis, 22 Wend. 165; Farrar v. Beeman, 63 Tex. 175; Chadwick v. Marsh, 21 N. J. L. 467; Baird v. Taylor, 6 Humph. 186; Jemmison v. Gray, 29 Ia. 547; Curry v. Larer, 7 Pa. St. 473; Robeson v. Whitesides, 16 S. & R. 322.   (4)   The burden of proof will be on him who claims that a provision, for the payment of a specified sum, is liquidated damages, to show that it was intended as such by the parties.   2 Greenl. on Evid. (Lewis' Ed. 1896), sec. 257; Tinkham v. Satori, 44 Mo. App. 664; Keck v. Bieber, 148 Pa. St. 646; Smith v. Wainwright, 24 Vt. 297; March v. Allabough, 103 Pa. St. 342; Shute v. Taylor, 5 Met. 67; Wilson v. Baltimore, 83 Md. 203.   (5) When the word "penalty" is used in a bond or contract, it is generally conclusive against the amount therein stated being held liquidated damages.   But the courts give little weight to the use of the words "liquidated damages," unless there are other statements in the contract which make it certain that the

parties had considered, computed and agreed upon the damages. Hammer v. Briedenbach, 31 Mo. 52; Basye v. Ambrose, 28 Mo. 39; Taylor v. Sandiford, 7 Wheat. 13; Bagley v. Peddie, 16 N. Y. 469; March v. Allabaugh, 103 Pa. St. 342; Smith v. Dickeson, 3 B. & P. 330; Wilkinson v. Colley, 164 Pa. St. 41; Smith v. Brown, 164 Mass. 384; Condon v. Kemper, 47 Kan. 130; Van Buren v. Diggs, 11 How. 477; Perkins v. Lyman, 11 Mass. 76; Stearnes v. Barrett, 1 Pick. 451; Smith v. Wainwright, 24 Vt. 102; Colwell v. Lawrence, 38 N. Y. 74; Huntington v. Attrill, 146 U. S. 657; Moore v. Colt, 127 Pa. St. 297; Watts v. Camors, 115 U. S. 360; Smith v. Wedgewood, 74 Me. 460. (6) Where there is a variety of provisions in a contract, and a certain sum is stipulated to be paid upon the violation of any and all of such provisions, or where a slight deviation from the contract is visited with the same amount of damage as a breach of the whole or the most important terms of the contract, such sum is regarded as a penalty. Gower v. Saltmarsh, 11 Mo. 271; Lyman v. Babcock, 40 Wis. 503; Hathaway v. Lynn, 75 Wis. 186; Wilkinson v. Colley, 164 Pa. St. 41; Bigony v. Tyson, 75 Pa. St. 157; Ashley v. Weldon, 2 B. & P. 353; Watts v. Camors, 115 U. S. 360; Pennybeche v. Jones, 106 Pa. St. 337; Horner v. Flintopl, 6 M. & W. 678; 3 Parsons on Contracts (8 Ed.), *161; Burrill v. Dagget, 77 Me. 545; Coswell v. Johnson, 58 Me. 164; Perkins v. Lyman, 11 Mass. 76; Moore v. Colt, 127 Pa. St. 297; May v. Crawford, 142 Mo. 390. (7) The two last provisions of the contract being conceded to be penalties, the one sued upon will also have to be so interpreted. March v. Allabough, 130 Pa. St. 342; Lansing v. Dodd, 45 N. J. L. 526; Holdeman v. Jennings, 14 Ark. 333. (8) The amount of $5,000 "was unreasonable and out of proportion to the probable damage," and is, therefore, a penalty. Cochran v. Railroad, 113 Mo. 363; Hamaker v. Schroers, 49 Mo. 408; Morse v. Rathburn, 42 Mo. 594; March

v. Allabough, 103 Pa. St. 335; Wilkinson v. Colley, 164 Pa. St. 41.

MARSHALL, J.—Damages for breach of contract.

## I.

This case is here for the second time, upon appeal by the plaintiffs. The prior decision is reported in 142 Mo. 390. The evidence of the plaintiffs then and now is substantially the same. Then the defendants offered no testimony, insisting that as plaintiffs had proved no special damage the judgment of the circuit court, which awarded plaintiffs only nominal damages, should be affirmed, because the contract between the parties provided only for a penalty for its breach, while plaintiffs contended that the damages were liquidated by the contract and therefore the trial court should have entered judgment for five thousand dollars, the amount specified in the contract, in respect to the acts complained of, and hence the judgment for only nominal damages was erroneous. The trial court had found that the defendants had broken their contract, and this court then held that this finding was proper. The judgment below was then reversed and the cause remanded for a new trial. Upon a trial anew before a jury in the lower court the plaintiffs introduced the same evidence as before, and rested without proving any special damages, claiming that under the decision of this court, on former appeal, the contract provided for liquidated damages, and not for a penalty. The defendants denied this meaning of the prior decision, but introduced some testimony, principally to show that they had not advertised for sale goods as having been purchased from plaintiffs which had not in fact been so purchased, and to show that at the same time that defendants were publishing the advertisements complained of by plaintiffs, as constituting a breach of contract, the plaintiffs were advertising that they had sold only certain portions of their goods to defendants and that as to the remaining portions they

were still doing business.    There was a verdict for the defendants, from which plaintiffs have appealed.

Counsel for the respective parties are utterly disagreed as to the meaning and effect of the decision of this court on prior appeal, and the trial court, seemingly, was unable to understand it.

Under the conditions stated that decision can be held to have but one meaning—the breach having been found, the only remaining question in the case was the amount of the damages.    The trial court treated the contract as providing for a penalty, and so, in the absence of proof of special damage, assessed the damages at a nominal sum.    This court approved the finding as to the breach, but reversed the judgment below as to the damages, denying that nominal damages could be considered the true measure of damages in this case.    True, the opinion does not state, in so many words, whether the contract was for a penalty or for liquidated damages, but as there was then no proof of special damage, the finding, by the trial court, of only nominal damages would necessarily have been affirmed if this court had regarded the contract as providing merely for a penalty.    Moreover, the opinion pointed out that "the exact damage plaintiffs will suffer is not susceptible of definite ascertainment, and the amount of compensation fixed by the agreement of the parties is not apparently unreasonable when we consider the general character of the transaction, and the business relations of the parties," and further refers to the difficulty of proving an injury to business, resulting from "the mere advertising of a rival concern," in the absence of a stipulation fixing the damages.    It is plain, therefore, that this court treated the case as a proper one for liquidated damages, for it would not have remanded the case to afford plaintiffs an opportunity to prove their damages, after saying that such damage "is not susceptible of definite ascertainment."    But to dispel all doubt as to what was then meant, we hold that it presented a case of

liquidated damages. The fact that a judgment was not then entered here or the cause remanded with directions to the trial court to enter a judgment for the full amount of damages agreed upon, must be taken as intending to offer the defendants an opportunity to disprove the breach, which they had failed to do on the first trial, for the probable reason that they regarded the contract as providing for a penalty, and as no actual damage had been shown, they were, apparently, content to let judgment go for nominal damages. Any other course, upon the record as it then was, might well have been complained of as extremely harsh. But it can not now be relied on to throw doubt upon the meaning of that decision.

## II.

We might stop here and do now what could have been done then, but the course of procedure in the case, and the marked ability and deep research of the respective counsel, warrants a fuller review of the case as it is now presented.

Prior to January 1st, 1894, plaintiffs conducted a large department store, on the corner of Broadway and Morgan streets, in the city of St. Louis, known as "The Famous," and defendants were engaged principally in the dry goods business, on the corner of Broadway and Franklin Avenue, in that city, their respective establishments being within one block of each other. The plaintiffs had a stock of goods worth about four hundred thousand dollars, about one-fourth of which was dry goods and notions. They desired to go out of the dry goods and notions branch of their business, but to remain in business as to their other branches. Accordingly they entered into the following agreement with defendants on that day.

*"This agreement witnesseth:*

"That D. May & Co., of St. Louis, Mo., a copartnership composed of David May, Joseph Shoenberg, Louis D. Shoenberg and Moses Shoenberg, have this day agreed with D.

Crawford & Co., a copartnership composed of D. Crawford and John Crawford, doing business in St. Louis, Mo., to sell to them the following goods, wares and merchandise, which D. May & Co. have on hand in their store at the close of business on the 9th day of January, 1894, situated in the building of the Famous Shoe and Clothing Co., on the northwest corner of Broadway and Morgan streets in the city of St. Louis, viz.: Black and colored dress goods kept and sold in Department F; silks, satins, velvets and plushes kept and sold in Department G; linens and white goods kept and sold in Department H; domestics, woolen, cotton goods, etc., kept and sold in Department I; lace curtains, draperies, portiers, upholstery, blankets, comfortables, lap robes, etc., kept and sold in Department J; linings kept and sold in Department K; notions, leather goods, art needlework, fancy goods, jewelry, perfumes, soaps, toilet articles, etc., kept and sold in Department N; kid gloves, fabric gloves, silk mittens, woolen mittens, etc., kept and sold in Department O; dress trimmings, mohair, silk braids, buttons, buckles, etc., kept and sold in Department P; laces, embroideries, etc., kept and sold in Department Q; handkerchiefs, veilings, ruchings, ladies' neckwear, etc., kept and sold in Department R; muslin underwear, corsets, lace and silk caps, infants' wear, sewing machines, etc., kept and sold in Department S; it being the intention of said D. May & Co., in selling, and said D. Crawford & Co. in buying the merchandise in the aforementioned departments, that said transfer of merchandise shall include any and all other articles kept and sold by said D. May & Co. in said departments not heretofore particularly and individually mentioned. Said merchandise being contained principally on the first and ground floors, the show-cases, windows and in the reserve stockroom on the fourth floor of said building; the delivery of said goods being made to D. Crawford & Co. upon the execution of this contract, and the same to be removed

by them immediately subsequent to the complete taking of inventory of said merchandise by D. May & Co.; inventory commencing on the morning of the 10th day of January and continuing from said time, diligently and uninterruptedly, until an account of all merchandise shall have been taken. The price and consideration to be paid for same to said D. May & Co. by said D. Crawford & Co. is to be the invoice cost price of said goods without any additional charges, less 32 1-2 per cent upon said cost price; it being understood that, for the purpose of ascertaining said cost price all invoices and cost-marks, whether private or otherwise, now in the possession of said D. May & Co. shall be open to the inspection of said D. Crawford & Co., and in all instances where a reference mark as to cost may be missing and the cost of such merchandise may not be ascertained by invoices, that the same shall be mutually agreed upon by the parties thereto.

"The receipt of five thousand dollars is by these presents acknowledgment by D. May & Co. from said D. Crawford & Co. as a part payment on the purchase price of said merchandise hereinabove enumerated; it being understood that the balance that may be found to be due D. May & Co. upon the completion of the invoice by them, shall be paid them in cash, without discount or deduction, upon said completed invoice being tendered D. Crawford & Co. and prior to the removal of the goods herein sold. It is mutually agreed and understood, as a condition of this sale, that D. Crawford & Co., the purchasers, herein, are by these presents restricted and prohibited from in any way, directly or indirectly, by means of the public press, posters, circulars (mailed or distributed) or by any other public means of any kind or nature whatsoever, from using in their advertisements of the purchase of the above mentioned merchandise, the general term, 'dry goods,' 'house furnishing goods,' 'chinaware,' 'shoes,' 'clothing,' 'shirt-waists,' 'cloaks,' 'wraps,' 'suits,' 'fur trimmings,' 'men's and boys' hats and caps,' 'ribbons,' 'millinery,' or anything pertaining

thereto. It being distinctly agreed and understood that the said D. Crawford & Co. shall be permitted to advertise no other articles as having been bought by them from the said D. May & Co., or Famous, than those actually sold and delivered to them by D. May & Co., and enumerated as sold and kept in the departments mentioned in the first portion of this agreement. As a penalty to insure the faithful carrying out of this provision of this agreement, said D. Crawford & Co., individually and collectively, for themselves, their heirs, administrators, successors and assigns, bind themselves forever in the penal sum of five thousand dollars, lawful money of the United States, to be paid said D. May & Co., as liquidated damages, in lieu of all other damages, for their breach or breaches of the above provision, which said D. May & Co. may be entitled to recover by suit brought in any competent court.

"In order that this agreement pertaining to the purchase and delivery of the merchandise herein enumerated may be faithfully carried out by both of the parties hereto, it is understood and agreed that, if the said D. May & Co. shall fail to deliver the said goods, wares and merchandise herein described, to said D. Crawford & Co. at the time and price herein agreed upon, then the said D. May & Co. shall forfeit to the said D. Crawford & Co. the sum of ten thousand dollars, as liquidated damages in lieu of any other damages under this contract; and in the event that the said D. Crawford & Co. shall fail to accept the aforesaid goods, wares and merchandise at the time they may be tendered to them after completion of inventory, or shall fail to pay the amount due as a balance on the purchase price as agreed upon herein for said goods, wares and merchandise, then said D. Crawford & Co. agree, in lieu of all other damages under this agreement, that they will pay to said D. May & Co., as liquidated damages for their breach or breaches, as in this section specified, in the sum of ten thousand dollars. It is understood that in the event of the breach or breaches of this agreement and any

failure to pay the liquidated damages which may be due by either of said parties hereto, that suit may be instituted in any competent court to recover the said liquidated damages. In witness whereof the parties hereto have hereunto set their hands and seals, in duplicate, this ninth day of January, A. D. 1894."

The goods thus sold invoiced at the contract price about $65,000, and were delivered to defendants, who paid said sum therefor. The plaintiffs had about $300,000 worth of goods still left, consisting, among other things, of china, glassware, house-furnishing goods, shoes, hats, caps, trunks, valises, men's and boys' clothing, cloaks, suits, furs, millinery and ribbons, ladies' and children's underwear and hosiery.

On the 22d of January, 1894, the defendants advertised in the St. Louis papers, their purchase. In the Globe Democrat the advertisement read: "D. Crawford & Co.'s great sale of the 'Famous' stock of new merchandise begins this morning at D. Crawford's Store. Full particulars of this gigantic sale see papers of yesterday." In the Post Dispatch it read: "Got 'em Again! You Bet!! The big purchase by D. Crawford & Co. of the Famous new and immense stock of First-Class General Merchandise, excepting clothing, shoes, etc., etc., fetched the Burghers as never before. Bargains for every day. till you can't rest!!" On the 24th of January, 1894, defendants inserted in the Post Dispatch, the Star-Sayings and the Chronicle, an advertisement the head-lines of which were: "The half has not been told!! of D. Crawford & Co.'s great scoop of the 'Famous' stock!! of its extent, its variety, its richness, its freshness, its newness, its adaptability to the wants of the St. Louis people!! Take a glance at it. It will make your mouth and eyes water, and your heart leap for very joy!! 'Tis yours, all yours. Yours to command, yours to buy and yours to send home, all for a mere song!! Crawford's got the whole 'Famous' outfit except the 'cloding' (in the Chronicle it was properly spelt) the shoes, the cloaks, the men's underwear,

millinery and hosiery.   Of these Crawford's themselves had enough and to spare, and are retailing them at prices below what the 'Famous' owned these particular goods at ! ! ''   On the 21st of January, 1894, the defendants inserted the following advertisement in the St. Louis Sunday Mirror:

"No Stock of Goods on this Continent is Too Big for
D. CRAWFORD & CO.

"To Buy Out, Handle and Pay the Cash for so long as the Price is Right.

"PHENOMENAL AND CHARACTERISTIC SCOOP BY THE IRREPRESSIBLE SCOOPERS.

"Of the Whole Merchandise contained in the Famous Store, comprising the following:

"Silks, Velvets, Satins, Plushes, Black and Colored Dress Goods, Sheetings, Shirtings, Flannels, Upholstery, Laces, Embroidery, Ladies' Muslin Underwear, Corsets, Ladies' Neckwear, Notions, Perfumes, Jewelry, Lace Curtains, Draperies, Handkerchiefs, Gloves, Baby Caps, Ladies' Waists, etc., etc., etc., etc., who, like little wanton boys who swim on bladders, have been disporting themselves these few summers in (to them) the untried and unknown sea of Dry Goods, but far, far beyond their depth, endeavoring with such flimsy means to keep on the same track with such strong and able swimmers as CRAWFORD'S !   Every experienced mariner could foresee the end, hence the

"Graceful and Unconditional Surrender and Capitulation of the Famous to the Doughty Scots ! !   To the Victor Belongs the Spoils ! !

"Crawford's will put on sale in the morning this whole immense stock of

"NEW FIRST-CLASS MERCHANDISE
At Prices to make Wilson (with his little bill) blush and hang his head for very shame !

"Doors open at 9 a. m.; close, dinner hour, 12 to 1; open at 1 and close at 5 p. m.   The public will kindly note above arrangement and save themselves disappointment.

"Terms, as usual, Cash on the nail.   No C. O. D.'s. No goods sent on approval.   No samples sent.   No exchanging. No wheedling.   Merit only talks at CRAWFORD'S
                                        "D. Crawford & Co."

On the 13th of March, 1894, the plaintiffs instituted this action.   The petition, after describing the character of the parties, set out the contract, and then laid the breaches, as follows:

"Plaintiffs state that said property, mentioned in said agreement, was then sold and delivered to defendants, and defendants paid plaintiffs therefor the purchase price stipulated in said contract.   But that defendants failed to keep the agreement entered into between plaintiffs and defendants in said contract, by which defendants were restricted and prohibited therein from in any way, directly or indirectly, by means of the public press, posters (mailed or distributed), or by any other public means of any kind or nature whatsoever, from using in their said advertisements of the purchase of the above merchandise, the general term 'dry goods,' 'house furnishing goods,' 'chinaware,' 'shoes,' 'clothing,' 'shirt-waists,' 'cloaks,' 'wraps,' 'suits,' 'furs,' 'fur trimming,' 'men and boys' hats and caps,' 'ribbons,' 'millinery,' or anything pertaining thereto, and violated the same. But defendant failed to keep the agreement set forth in said contract by which they agreed to advertise no other articles as having been bought by them from said D. May & Co. or 'Famous,' than those actually sold and delivered by said D. May & Co., and enumerated as sold and kept in the departments mentioned in the first portion of the aforesaid agreement, and violated the same.   That said defendants, in total disregard of their agreements with the plaintiffs made in said contract, advertised, by means of the public press and posters, other arti-

cles as having been bought by them from said plaintiffs or 'Famous,' than those actually sold and delivered to them by said D. May & Co., and used, in their advertisements of the merchandise mentioned in said contract, the general terms they were prohibited from using by said contract; by reason whereof defendants became indebted to plaintiffs in the sum of five thousand dollars, to be paid by said defendants to D. May & Co., as liquidated damages, as stipulated by the terms of said contract.

"Wherefore plaintiffs pray judgment against the defendants for the sum of five thousand dollars with interest and costs."

The answer of the defendants is a general denial.

Upon the trial in the circuit court, the plaintiff proved the contract, the advertisements aforesaid, and somewhat similar signs on the front of defendant's store, the invoice price of the goods, the value of the stock of goods they carried before and after the sale, with their character, and the delivery and payment of the goods to the defendants, and then rested.

Over the plaintiffs' objection the court allowed the defendants to show that on the 14th and 21st of January, 1894, the plaintiffs advertised in the St. Louis papers, stating that they had sold to defendants their entire stock of certain specified goods, and giving as their reasons for selling, the enormous growth of their business in certain other specified goods; and also over the plaintiff's objection the court permitted defendant Dugald Crawford to testify that he had not advertised any goods as having been purchased from plaintiffs which were not in fact purchased from them.

The court refused to give the following instructions asked by the plaintiffs.

1.   "The court instructs the jury to find a verdict for plaintiffs and assess their damages in the sum of five thousand

dollars, with interest thereon at the rate of six per centum per annum from March 13, 1894."

To which refusal of the instruction thus prayed, plaintiffs then and there excepted at the time.

Plaintiffs then prayed the court to instruct the jury as follows:

2.  "The jury are instructed that the following facts are admitted by the defendants:

"First.  That the defendants executed and delivered the contract for the violation of which the plaintiffs now sue.

"Second.  That the defendants caused the insertion of the advertisements which have been read in evidence by plaintiffs.

"The jury are therefore instructed that if they believe and find from the evidence that after the sale thus made by plaintiffs to defendants, the plaintiffs retained an amount of stock of the value of two hundred and fifty thousand dollars and more, and continued to sell the same at their store in the city of St. Louis, known as 'Famous,' and were so selling said stock when the advertisements read in evidence by plaintiffs were inserted by defendants, then the jury will find for the plaintiffs and assess their damages at the sum of five thousand dollars, with interest thereon at the rate of six per centum per annum from March 13, 1894.

3.  "The court instructs the jury that the defendants committed a breach of the contract read in evidence by inserting the advertisements offered in evidence by the plaintiffs in this case in the newspapers.

4.  "The jury are instructed that if they find for the plaintiffs they will assess their damages at the sum of five thousand dollars, with interest thereon at the rate of six per centum per annum from March 13, 1894."

At the defendants' request, the court, after modifying, gave the following instructions:

1. "The court instructs the jury that the defendants, under the contract, were entitled to advertise in any manner they chose, any goods whatsoever actually bought by them from plaintiffs for sale by them as having been bought from plaintiffs, or Famous, including any goods so actually purchased by defendants from plaintiffs.

2. "The court instructs the jury that the meaning of the contract introduced in evidence and the prohibition against advertising 'other articles,' means that the defendants were not to advertise other articles than those actually purchased from plaintiffs as having been bought by defendants from D. May & Co., or Famous."

The court of its own motion instructed the jury as follows:

"It appears from the written contract read in evidence in this case that on January 9, 1894, the plaintiffs, D. May & Company, sold to the defendants, D. Crawford & Company, certain goods, wares and merchandise which the plaintiffs had on hand in their store at the close of the business on the day above stated, situated in what is described in the written contract as the building of the Famous Shoe and Clothing Company, on the northwest corner of Broadway and Morgan streets, in the city of St. Louis, viz.: Black and colored dress goods, kept and sold in Department F; silks, satins, velvets and plushes, kept and sold in Department G; linens and white goods, kept and sold in Department H; domestics, woolen, cotton goods, etc., kept and sold in Department I; lace curtains; draperies, portiers, upholstery, blankets, comfortables, lap robes, etc., kept and sold in Department J; linings, kept and sold in Department K; notions, leather goods, art needlework, fancy goods, jewelry, perfumes, soaps, toilet articles, etc., kept and sold in Department N; kid gloves, fabric gloves, silk mittens, woolen mittens, etc., kept and sold in Department O;

dress trimmings, mohair, silk braids, buttons, buckles, etc., kept and sold in Department P; laces, embroidery, etc., kept and sold in Department Q; handkerchiefs, veilings, ruchings, ladies' neckware, kept and sold in Department R; muslin underwear, corsets, lace and silk caps, infants' wear, sewing machines, etc., kept and sold in Department S.

"It was stipulated in the contract that the defendants, D. Crawford & Co., should not in any way, directly, by means of the public press, posters, circulars (mailed or distributed), or by any other public means, in their advertisements of the merchandise so purchased, use the general term, 'dry goods,' 'house furnishing goods,' 'chinaware,' 'shoes,' 'clothing,' 'shirt waists,' 'cloaks,' 'wraps,' 'suits,' 'furs,' 'fur trimmings,' 'men's and boys' hats and caps, 'ribbons,' 'millinery,' or anything pertaining thereto.

"And it was further stipulated in said contract that the defendants were permitted to advertise no other articles as having been bought by them from the plaintiffs, D. May & Co., or Famous, than those actually sold as above enumerated and described.

"And it was stipulated in the contract that if the defendants should violate the provisions thereof above specified in reference to advertisements, they should pay to the plaintiffs for their damages the sum of five thousand dollars.

"The plaintiffs in this suit complain that the defendants have violated the provisions of the contract above specified, and bring this suit to recover the damages above named.

"The defendants deny that they have violated the contract, and this is the first question you are to settle by your verdict.

"If you believe from the evidence that the defendants, in their advertisements, included articles as having been bought from the plaintiffs, or Famous, other than those actually sold, as above specified in these instructions, then your verdict should be for the plaintiffs.

"But unless you find from the evidence that the defendants, in their advertisements, did include articles as having been bought from the plaintiffs, or Famous, other than those actually sold, as above specified in these instructions, your verdict should be for the defendants.

"If you find for the plaintiffs under the foregoing instructions, your next inquiry should be:   Have the plaintiffs by the defendants' conduct in question suffered any material or substantial damage?

"Unless you find from the evidence that the plaintiffs by the defendants' conduct in question have suffered material or substantial damage, you should assess the plaintiffs' damages at one cent.

"But if you find from the evidence that the plaintiffs by the defendants' conduct in question have suffered material or substantial damage, then you should assess their damages at five thousand dollars, with interest thereon at six per cent per annum from March 13, 1894, to this date, you making the calculation of interest yourselves."

The jury returned a verdict for the defendant, and after proper preliminary steps, plaintiffs appealed to this court.

The plaintiffs insist that there is no difference between the facts as now shown and as they appeared on former appeal, and that as the trial court held that there was a breach of the contract shown, which this court approved, and as the case was then reversed because the trial court had treated the contract as one for a penalty and this court held it to be one for liquidated damages, there was nothing left open for the trial court to do but to direct a verdict for the plaintiffs for $5,000 with interest, and hence the circuit court erred in permitting the jury, upon this state of facts and upon the record, to pass on the question of whether there was a breach of the contract, and further erred in instructing the jury on the measure of damages.   On the other hand the defendants contend that the question of whether or not there was a breach of contract

proved, was a matter of fact which was properly submitted to the jury, and as the jury found for the defendants, their finding must have been upon the theory that no breach had been proved, and hence their verdict is final, especially in this court; and further that this court did not decide on prior appeal that the contract was for liquidated damages and not for a penalty; but even if it did so decide, they ask that the question be now reconsidered and reviewed; and also urge that the court properly instructed the jury as to the damages.

As hereinbefore pointed out, the decision in this case on prior appeal was that the sum of five thousand dollars, which the defendants agreed to pay the plaintiffs in case of breach of the terms of the contract, must be regarded as liquidated damages and not as a penalty. This being so, it became the law of this case and was not open to question in the trial court. The duty of that court was to obey it without respect to its opinion of whether it was right or wrong. Whatever error there was in it could only be corrected on appeal to this court. [Gamble v. Gibson, 83 Mo. 290.] This principle is well stated in Wells on Res Adjudicata and Stare Decisis, sec. 613, to be: "It is a settled principle that the questions of law decided on appeal to a court of ultimate resort, must govern the case in the same court, and the trial court, through all subsequent stages of the proceedings, and will seldom be reconsidered, or reversed, even if they appear to have been erroneous. 'A previous ruling by the appellate court upon a point distinctly made may be only authority in other cases, to be followed, or affirmed, or to be modified, or overruled, according to its intrinsic merits, but in the case in which it is made, it is more than authority; it is a final adjudication, from the consequences of which the court can not depart, nor the parties relieve themselves' and, that too, notwithstanding the prior decision may be 'in abrogation of one of the plainest principles of law,' since nothing actually determined therein can be reviewed, except indeed in the prescribed manner of

obtaining a direct rehearing on settled terms and conditions by a rule of court." This rule is necessary to the orderly and decent administration of the law, for it would destroy all respect for the law and make judgments of courts of final resort mere mockeries and travesties, if the trial court could be permitted on a trial anew in that court, to set aside, disregard or disobey them. The cases cited by the author quoted from support this doctrine to its last analysis, and many others could be added, if precedents were necessary to support so manifest a proposition. It is not to be understood that the trial court on the trial anew in this case acted in disregard of this principle. The trouble seems to have arisen from a misapprehension of what this court previously decided, and not from disobedience to its mandates. As to questions of fact, of course a prior decision of the appellate court is not conclusive, as the law applicable to the facts as presented by the record as it then appeared is all that the appellate court could have decided. The case, as to the facts, is to be treated on a new trial in the trial court, as if there never had been a trial. [Crispen v. Hannovan, 86 Mo. l. c. 168.] And if the facts on the trial anew present a different case from that presented on the first trial to the appellate court, the trial court will be bound by the prior decision only so far as the principles of law then declared are applicable to the new state of facts. If, however, there is no substantial difference between the facts shown on the first and second trials, the trial court has but one function to perform—to enforce the law applicable to that state of facts as it has been declared by the appellate court.

This raises the question whether there was any material difference of facts shown on the trial anew from what they were when the case was decided on prior appeal. It has already been shown hereinbefore that the evidence on the part of the plaintiffs was the same, on both trials, and that on the first trial the defendants offered no testimony, whereas on the second trial their evidence was simply to the effect that they

had not advertised goods as having been bought from plaintiffs which in fact were not so bought, and that the plaintiffs had themselves advertised, about the same time, in, perhaps, the same papers, the fact that they had sold certain parts of their stock to defendants, but were still engaged in business as to all their other branches or departments.

The contract prohibited the defendants from using in their advertisements fourteen specific general terms, and also from advertising goods as having been purchased from plaintiffs which had not in fact been purchased from them. The petition charged that defendants had broken their contract in both respects. The oral testimony of Dugald Crawford was properly admitted to disprove the second alleged breach, and was necessarily of a negative character, and was not objectionable as stating a conclusion and not a fact. It was unnecessary in the case, because plaintiffs had introduced no evidence in support of the second breach alleged, but it was not objected to for this reason, and the court therefore committed no error in admitting it. The evidence adduced by defendants going to show that the plaintiffs had advertised their sale to defendants of certain goods only, but were still in business as to their remaining departments, would have been properly admissible, if the contract had only provided for a penalty for its violation, for it would have tended to counteract *pro tanto,* the sting of the defendants' advertisements, and to advise the public that plaintiffs were still in business so far as their remaining departments were concerned. But as the contract was for liquidated damages, this evidence was wholly inadmissible. It could not reduce the plaintiffs' recovery, nor could it defeat it entirely. There was no issue of fact joined in the case which this testimony would tend to support. It was doubtless offered in pursuance to defendants' contention that the contract was for a penalty only, and it was properly objected to by plaintiffs because the damages being liquidated by the contract, such testimony had no place in the case. The

trial court admitted it, and must therefore have meant that it held as a matter of law that the contract was for a penalty only, thereby falling into the error of misconceiving the meaning of the prior decision of this court.

The facts therefore were substantially the same on both trials, and the trial court should have enforced the law as declared by this court, for the facts being conceded, the jury had no function to perform, except to obey the direction of the court as to the legal effect of the uncontroverted facts. The trial court, however, refused the instructions asked by plaintiffs, which were predicated upon the theory of liquidated damages, and submitted the case to the jury to find, 1st, whether there had been a breach of the contract, and 2d, in effect, whether the contract was for a penalty or for liquidated damages, for, without employing these specific words, it directed the jury to find for the plaintiffs in the sum of $5,000, with interest, if they found that the plaintiffs had suffered material or substantial damage, but to give them only one cent if they found that they had suffered no material or substantial damage.

If there had been any conflict in the testimony as to the breach, it would have been proper to submit it to the jury as a question of fact, but here there was no conflict of testimony, no countervailing evidence, and no impeachment of any witness. The facts stood admitted. Their legal effect alone remained, and that was a question for the court and not for the jury. Upon the same facts it had previously been held by the trial court that they constituted a breach of the contract, and this court had approved that finding, and a casual or critical reading of the advertisements would create a false impression on the mind of any one. It was error therefore for the court to submit the matter as a question of fact to the jury, and the verdict, declaring that there had been no breach, in face of the uncontradicted evidence that there had been a breach, can not be allowed to stand and should have been

set aside (or better still never permitted) by the trial court. [Jackson v. Hardin, 83 Mo. 175; Powell v. Railroad, 76 Mo. 80; Hearne v. Keath, 63 Mo. 84; Reichenbach v. Ellerbe, 115 Mo. 588; Hipsley v. Railroad, 88 Mo. 348; Wilson v. Albert, 89 Mo. 537; Long v. Moon, 107 Mo. 334; Caruth v. Richeson, 96 Mo. 186; Avery v. Fitzgerald, 94 Mo. 207; Spohn v. Railroad, 87 Mo. 74; Whitsett v. Ransom, 79 Mo. 258.]

The instruction given by the court of its own motion, was further faulty, in that it did not cover the whole case. The contract prohibited the use of certain specific terms by defendants in their advertisements, and also forbade their advertising goods as bought from plaintiffs which had not been so purchased, and the petition assigned both acts as breaches, but the instruction given by the court of its own motion submitted only the latter feature of the case to the jury. It was specially misleading to the jury and prejudicial to the plaintiffs, because the plaintiffs' entire testimony was in support of the former, and they had offered no testimony to sustain the latter, while the exact reverse was true as to defendants' evidence, and this instruction submitted only the latter feature of the case to the jury.

It was also erroneous to submit the second proposition contained in this instruction to the jury. The jury might as well have been instructed to give the plaintiffs one cent if they believed the contract was for a penalty and to give them five thousand dollars if they believed it was for liquidated damages. The plaintiffs had introduced no evidence of actual damages, in fact there was no evidence as to the quantum of damages introduced by either party. There was then nothing for the jury to proceed upon in order to determine whether the damage was material or substantial or not, and yet the jury were directed to find one cent or five thousand dollars according as they found the damage to be material or substantial or not, when they had no evidence before them upon which to predicate a finding one way or another. This para-

dox clearly emphasizes the error of submitting questions of
law to the jury; and this is true in whatever form or by the
employment of whatever language it may be done. The
question of whether a sum provided in a contract for its non-
observance is a penalty or liquidated damages is a question
of law for the court, and never a question of fact for the
jury.

In any event therefore the judgment must be reversed.

## III.

We are asked to review the former decision in this case,
and to consider again the contract as to whether it is for a
penalty or for liquidated damages, and the courteous terms in
which the request is couched, together with the marked ability
and deep research of counsel, shown in the exhaustive brief
filed in the case, and the fact that the previous decision seems
to have been misunderstood by counsel and the trial court,
induces us to accede to the request, but it must not be under-
stood as establishing a right or affording a precedent for so
doing in any other case, but rather to the end that confusion
may not follow in other cases, involving the question here in
issue.

Originally at common law where the parties to a contract
had stipulated for the payment of a sum certain for the non-
performance of the contract, the courts of law left them where
they had placed themselves, and enforced the provision of the
contract as to the damages with the same rigidity that they did
any other provision of the contract, and the only defense was
a release under seal. Then the only relief available was in
a court of equity, where the wronged party was permitted to
exact only the actual damages suffered by the breach of the
contract. So many difficulties arose in consequence of the
harsh rule of the common law courts, that by the statutes of
8 and 9 William III, Ch. 11, sec. 8 [Stats. at large, Vol. 3,

p. 643] and 4 and 5 Anne, Ch. 16, secs. 12 and 13 (Stats. at large, Vol. 4, pp. 206 and 207) the practice in courts of law was changed so as to authorize only a recovery of the actual damages instead of the whole penalty, thereby avoiding the necessity of a resort to a court of equity.    [1 Sedgw. on Dam. (8 Ed.), secs. 390, 391, et seq.]    Notwithstanding these statutory provisions, however, the right to stipulate the damages is still recognized by the courts in proper cases.  Whether the sum specified in a contract as damages for its non-performance is a penalty or liquidated damages has always been a question of law for the court, and no case that our attention has been directed to or our research discovered, has left it to a jury to decide either expressly or by the employment of equivalent words.    Three principal tests are usually employed by the courts to determine whether it is a penalty or liquidated damages:    1st, the language employed; 2d, the subject-matter of the contract; and 3d, the intention of the parties.    The language employed is the least relied on.    "The subject-matter of the contract, and the intention of the parties are the controlling guides.    If, from the nature of the agreement, it is clear that any attempt to get at the actual damage would be difficult, if not vain, the courts will incline to give the relief which the parties have agreed on.    But if, on the other hand, the contract is such that the strict construction of the phraseology would work absurdity or oppression, the use of the term liquidated damages will not prevent the courts from inquiring into the actual injury sustained, and doing justice between the parties."    1 Sedg. on Dam. (8 Ed.), sec. 396.    "Where the subject-matter of the contract is such that the damages for its breach can be computed with certainty by definite rules, the courts will usually treat the sum agreed upon as a penalty; especially if there is great disparity between the agreed sum and the actual damage.    Such contracts are those for the payment of money, and those in which the market price affords a certain standard for the measure of damages.    But if from

the nature of the contract the damages can not be calculated with any degree of certainty, as when that which is the subject-matter of the contract has no precise market value, or there are peculiar circumstances contemplated by the contract, the stipulated sum will be held to be liquidated damages." 5 Am. and Eng. Ency. of Law (1 Ed.), p. 25, and cases cited in notes.   As was so well said by Scott, J., in Basye v. Ambrose, 28 Mo. l. c. 44:  "It is obvious that every case occurruing under this branch of the law must in a great measure be determined by its own circumstances.   If courts were to hold that the parties, by adopting any particular form, might relieve their contracts from their supervision, the law would be entirely defeated, as nothing would be easier than to adopt such form in every case.   The nature and stipulations of the contract must determine whether the sum stipulated to be paid in case of its violation is a penalty or liquidated damages. The statute can not be evaded by arbitrarily calling a penalty liquidated damages.   We shall not attempt to review the cases on this subject.   They are numerous and not easily reconcilable.   On such a question an entire concurrence of opinion could hardly be expected."

Sedgwick on Damages (8 Ed.), sec. 395, classifies the subject as follows:   1st, an agreement to do or refrain from doing a particular act, or in default thereof, to pay a given sum of money; 2d, an agreement to pay an absolute sum of money, conditioned to become void on payment of a less sum, or the performance of some particular act; 3d, an agreement to do or refrain from doing a particular act, and if the promise is not performed, to pay a given sum of money as a penalty; and 4th, an agreement in all respects like the third mentioned except that the sum to be paid is declared to be liquidated, or stated damages or as a forfeiture.

The sum of the whole matter is that where the contract is one touching a legal subject-matter, the parties *sui juris* and the damages for a breach can be computed with certainty by

definite rules, the courts will construe it to be a penalty; but where from the nature of the contract the damages can not be calculated with any degree of certainty, or any attempt to get the actual damage would be difficult, if not vain, or where "the exact damage is not susceptible of definite ascertainment" or where the acts to be done or omitted "are not measurable by any exact pecuniary standard," and the intention of the parties "is plain and palpable," and the amount stipulated in the contract as the damages to be recovered is not "disproportionate to the probable damages," the courts will construe it to be liquidated damages.

Applying these principles to the case at bar. The contract related to a legal subject-matter. The parties were *sui juris*. There is no pretense of fraud or overreaching. They were successful business men, of large means and experience, and knew the advantages or injuries resulting from advertising. They had been rivals. The transaction involved the payment of sixty-five thousand dollars in cash, and the plaintiffs still had a stock of goods left worth three hundred thousand dollars, while that of defendants was also necessarily great. The plaintiffs sold to defendants that branch of their business wherein they had been rivals. They agreed that defendants should not use certain specific, general terms in advertising the sale and purchase. They knew better than any jury or court could know, what the effects upon their respective business would be from using those terms in connection with the transaction. They kept their fingers constantly upon the public pulse, and understood what effect such advertisements would have upon the buying world. They agreed what the damage would be to the plaintiffs in case of a breach of the contract. That damage "is not susceptible of definite ascertainment," or "measurable by any exact pecuniary standard," or computable with any degree of certainty, by definite rules. Their intention was "plain and palpable." They stipulated for damages which are not "disproportionate to the

probable damage." The defendants broke their agreement. The plaintiffs have been damaged, and should be compensated according to the measure deliberately fixed by the parties. This is not a case where the contract has been broken in an insignificant or trivial particular, and hence the cases where the courts have relieved against manifest injustice or oppression for breaches of a trivial character, have no application here. The breach here was in respect to matters which were regarded by the parties as of sufficient magnitude to be specially enumerated and guarded against. The defendants advertised that they would sell "Famous" stock; that they had purchased "Famous" new and immense stock of first-class general merchandise, excepting clothing, shoes, etc., etc.;" that "Crawford's got the whole Famous outfit excepting the 'cloding,' and shoes, the cloaks, the men's underwear, millinery and hosiery:" and that, "no stock of goods on this continent is too big for D. Crawford & Co. to buy out, handle and pay the cash for so long as the price is right. Phenomenal and characteristic scoop of the irrepressible scoopers of the whole of the merchandise contained in Famous store, comprising the following . . . who, like little wanton boys who swim on bladders have been disporting themselves these few summers in (to them) the untried and unknown sea of Dry Goods" (one of the prohibited general terms) "but far, far beyond their depth, endeavoring with such flimsy means to keep on the same tack with such strong and able swimmers as Crawford's! Every experienced mariner could forsee the end, hence the graceful and unconditional surrender and capitulation to the doughty Scots!! To the victor belongs the spoils!! Crawford's will put on sale in the morning this whole immense stock of new, first-class merchandise, at prices to make Wilson (with his little bill) blush and hang his head for very shame." Such advertisements were clearly a gross breach of the letter and spirit of the contract, and could convey but damaging impressions on the mind of the public to the plaintiffs' business. For

such a breach the defendants agreed that they would pay five thousand dollars. It is wholly immaterial whether they also spoke of that sum as a penalty to secure the performance of the contract. They measured their own punishment in case of a breach of the contract. A jury could only guess at it, if it were treated as a penalty. The prior decision of this court was that the damages were liquidated. Tested by the rules universally recognized we reaffirm that conclusion. This case has now been twice tried in the circuit court and the same number of times in this court. The parties have adduced all their testimony. No good could come of another trial. But one judgment could ever be permitted to stand upon this record. Therefore to the end that there may be an end to this litigation, the judgment of the circuit court is reversed and the cause remanded to that court with directions to enter a judgment in favor of the plaintiffs for five thousand dollars, with interest at the rate of six per cent per annum from March 13th, 1894, to the date of such judgment. All concur, except VALLIANT, J., who having tried the cause while circuit judge, took no part herein.