ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAIL- 90   171
WAY COMPANY, Respondent, v. THE JEFFER- f96  ¹287
SON STONE COMPANY et al., Appellants.

**St. Louis Court of Appeals, November 5, 1901.**

1. **Contract: ACTUAL DAMAGES: LIQUIDATED DAMAGES: CON-STRUCTION OF CONTRACT.** If actual damages can not be "calculated with any degree of certainty" or "are not susceptible of definite ascertainment," and the "intention of the parties is plain and palpable," and the amount is not "disproportionate to the probable damages," the court will construe the amount to be liquidated damages.

2. ———: ———: ———: ———. In the case at bar, the actual damages sustained by the plaintiff on account of the breach of the performance of the contract alleged are not definite and certain, nor are they susceptible of definite ascertainment; and the intention of the parties is plain and palpable that the amount agreed on should be the measure of the plaintiff's damage for a breach of the performance of the requirements of paragraph thirteen of the contract.

Appeal from the St. Louis City Circuit Court.—*Hon. Selden P. Spencer,* Judge

AFFIRMED.

### STATEMENT OF THE CASE.

The suit was on the following bond executed by defendants, to-wit:

"Know all men by these presents: That we, The Jefferson Stone Company, as principal, and Jno. Loughran, Richard Cavanaugh, G. E. Bigot, S. C. Bunn, Alfred Berkey, T. J.

Remmers, sureties, of the city of St. Louis, State of Missouri, are held and bound unto the St. Louis, Iron Mountain & Southern Railway Company in the penal sum of three thousand dollars for the payment of which well and truly to be made, we do bind ourselves, our and each of our heirs, executors, administrators, successors and assigns, sealed with our seals, dated at St. Louis, Missouri, this fourteenth day of September, A. D. 1896.

"The condition of the foregoing obligation is such that, whereas, the St. Louis, Iron Mountain & Southern Railway Company has agreed with said Jefferson Stone Company to construct and operate a spur track or siding three thousand feet more or less in length from its main line near Wicks station to the quarry of said Jefferson Stone Company, *which will largely add to the value of said quarry and greatly facilitate the business operations of said Jefferson Stone Company;* which said agreement is in writing, dated the fourteenth day of September, A. D. 1896, one of the duplicate originals whereof is hereto attached and by reference made a part hereof.

"Now therefore, if the said The Jefferson Stone Company shall well and truly keep and perform all and singular the terms, conditions, provisions and its obligations as in said agreement provided, then this obligation shall be void; otherwise to remain in full force and effect.

JEFFERSON STONE COMPANY,<br>"By G. E. BIGOT, President.

"Attest:   S. C. BUNN, Secretary.

"RICHARD CAVANAUGH,<br>"JOHN LOUGHRAN,<br>"G. E. BIGOT,<br>"S. C. BUNN,<br>"ALFRED BERKEY,<br>"T. J. REMMERS.

(Seal.)

to recover the cost to plaintiff of laying the switch mentioned in the contract and referred to in the bond, which contract reads as follows, to-wit:

"These articles of agreement, made and entered into in duplicate, this fourteenth day of September, A. D. 1896, by and between the St. Louis, Iron Mountain & Southern Railway Company, party of the first part, and The Jefferson Stone Company, of the city of St. Louis, State of Missouri, party of the second part.

"Witnesseth: That for and in consideration of the sum of one dollar in hand paid to the party of the first part, by the party of the second part, receipt of which is hereby acknowledged, and other considerations hereinafter enumerated, and the further stipulations and agreements to be kept and performed by the said party of the second part, the said railway company hereby agrees to lay a spur track from its main track to the quarry of the said second party at or near Wickes station, in Jefferson county, Missouri, or the nineteen mile post, 3,000 feet, more or less, in length, as shown on the map or plat hereto attached and made a part of this agreement on the following terms and conditions, for the purpose of shipping stone and other quarry products:

"1.   The construction of the spur track referred to in this agreement is undertaken upon the express representation and guarantee of the party of the second part, to the party of the first part, that the party of the second part will obtain from the rightful owner or owners and deliver to the party of the first part a warranty deed or deeds conveying to said party of the first part, right of way for the said track, twenty feet in width, for a distance of 3,000 feet more or less, as said track may be constructed, and right of way for any diverging spurs made necessary to properly operate said quarry or quarries, said right of way to be furnished free of cost to the said Railway

Company, and the title to the same to be free and unincumbered.

"2. The said second party hereby agrees to do all the grading required and furnish the substructure in the construction of said siding or spur track and diverging spurs aforesaid, in such manner as may be directed by the general superintendent or other authorized agent of the said railway company named by him, and also to prepare the said grade in proper manner for laying the track thereon, all at their own cost and expense.

"3. The said railway company hereby agrees to furnish the necessary material, including ties, rails, switch fixtures, spikes, fastenings, etc., and the labor necessary to lay the said spur track aforesaid, in accordance with the map or plat hereto attached, for a distance of 3,000 feet, more or less, as said track may be constructed.

"4. It is hereby mutually agreed that all of the said rails, switch fixtures, fastenings, etc., furnished by the said railway company, shall during the existence of this agreement, and at all times hereafter, be the property of said railway company, and also that the said second party shall have no right, title or ownership in or to the said spur or side track and diverging spurs nor in the rails or other materials with which the said track or tracks may be laid.

"5. It is further mutually agreed that the said track or tracks when completed, shall be used by the said second party for the purpose of loading and shipping stone and other quarry products with this reservation, to-wit: That the said railway company shall have the right to use the said track for its own business, or for the business of any other persons or shippers, provided that said business can, in the judgment of the superintendent, or other authorized agent of said railway company, be done on the said track without serious detriment or incon-

venience to the business of the said second party.

"6.   It is further mutually agreed between the parties hereto, that if at any time the said second party shall from any cause discontinue or abandon the business contemplated to be done on the said track under this agreement, then in that event, or when this contract is otherwise terminated as herein provided, the said railway company shall have the right to take up the said rails, fastenings and other materials with which the said track is laid, and to remove all of said materials to any other point on its railroad and to use the same for any other purpose, without let or hindrance or molestation on the part of the said second party.

"7.   It is further mutually agreed that the said second party shall have no recourse at law or equity against the said railway company when the said track shall have been taken up and the material moved away, as provided by this contract, and the said second party hereby agrees to indemnify and save the said railway company harmless from all claims and all liability to any and all persons, by reason of said track being taken up and the materials moved away, as herein provided.

"8.   Said party of the second part hereby further agrees to promptly load or unload all cars that may be set on the said spur or siding by said railway company for loading or unloading; and further agrees to promptly pay the bills made and presented by said railway company for any and all damage to said cars by fire or in any other manner whatsoever, while the same are on the spur track or siding or diverging tracks, for loading or unloading as aforesaid.

"9.   It is further agreed and understood between the parties hereto that the said second party shall have no right or authority to sell, lease, convey or in any form assign to any other party, the right to use said spur track or siding, without the consent in writing of the general superintendent of said

railway company, authorizing such an assignment or transfer or use to be made.

"10. The said second party hereby further agrees to fully release and hold harmless the said railway company from and against all liability or claim for damages for killing, crippling or maiming any cattle, horses, mules, sheep, hogs or other live stock belonging to the said second party, or to their employees, which may be killed, crippled or maimed by said railway company on said spur track or siding.

"11. The said second party hereby further stipulates and agrees that in consideration of the agreements herein contained to be kept and performed by the said railway company, that they will fully release and hold the said railway company harmless from all liability or claim for damages on account of fire caused by locomotives operated upon said track or while engaged in work connected with the use of said track. Said second party hereby further agrees to release and does hereby release the said railway company from any and all liability for damage for any injuries which may occur, or to be done to the property of said second party by the said railway company, or its employees, while operating locomotives and cars upon said track.

"12. The said second party hereby further agrees that in consideration of the agreements herein contained, to be kept and performed by the said railway company that they will fully release, indemnify and hold the said railway company harmless from any and all liability or claims for damages for any injuries or hurts which may be done to the person of the employees, servants, officers or members of said second party by the said railway company or its employees while operating locomotives and cars upon said track, or while operating the same in work connected with the use of said track. Said second party agrees to and will reimburse the said railway company for any and all sums expended by reason of any injuries

or hurts sustained by the servants, employees, officers or members of said second party as aforesaid. Said railway company is hereby authorized to adjust and settle any claims or suit for personal injuries sustained as aforesaid, or for live stock killed or injured as hereinbefore stated, and said second party will reimburse said railway company for the amounts so paid out.

"13. To secure the faithful performance of all and singular the terms, conditions and provisions of this agreement, said party of the second part hereby agrees to furnish to said railway company a good and sufficient bond in the penal sum of $3,000 with two sureties thereon, satisfactory to the general superintendent of said railway company. One of the conditions of this agreement is that if said party of the second part shall not, within twelve months from the first day of November, 1896, ship from said quarry enough carloads of stone or other quarry product at the freight rate agreed upon, or to be agreed upon, between said party of the second part and said railway company, so that the freight earned thereon and paid to said railway company shall equal the cost of the ties, rails, switch fixtures, spikes and fastenings in said spur track and diverging tracks, and the wages paid for labor in constructing said tracks, then said party of the second part shall and will reimburse and pay to said railway company the full amount of money expended for labor and materials in the construction of said tracks. Any amount paid to said railway company pursuant to this provision shall not in any manner affect the ownership of said track or tracks or the materials therein, but the same and every part thereof shall remain and continue to be the sole property of said railroad company.

"14. Said party of the second part shall and will after the completion of the said spur track and diverging tracks, upon demand of said railway company, furnish at their own cost and

expense all cross ties, switch ties, bridge timbers and labor necessary to repair and renew the said tracks, and in default thereof said railway company may make all necessary repairs as aforesaid at the cost and expense of said party of the second part.

"15.   This agreement shall take effect on the day and year first before mentioned, and all work agreed to be done herein by said second party shall be done to the satisfaction and acceptance of the general superintendent or other authorized agent of said railway company, to be designated by him, and all of the covenants, stipulations and agreements of said second party contained herein shall at all times be fully performed and executed by the said second party to the satisfaction and acceptance of the general superintendent of said railway company, who shall have the right to cancel and terminate this contract whenever in his opinion, said work or any of the other obligations of said party of the second part are not so done and performed.

"This contract shall not become operative and effective until approved in writing on the face thereof, by the general manager of said railway company."

The answers were general denials.

A stipulation was entered into by the plaintiff and the answering defendants, whereby they admitted the execution of the contract referred to in the bond, and that the items of expenditure, for labor mentioned in the itemized account contained in the amended petition, are correct and reasonable, and were paid by plaintiff; and that from November 1, 1896, to November 1, 1897, there were shipped from the switch mentioned in plaintiff's petition, only eighty-four carloads of stone or other quarry products; and that the freight charges, agreed upon by plaintiff and defendant, Jefferson Stone Company, and paid by defendant, Jefferson Stone Company, to plaintiff,

for the transportation of said stone, or other quarry products, during said period, amounted to $609.36, as shown by the itemized statement attached to said stipulation.

It will thus be seen that the only questions of fact left for the trial court to determine was, whether the material specified in the itemized account set forth in the amended petition was put into this track, and whether the cost thereof, as shown by said itemized account, was true.

The trial was to the court sitting as a jury. The plaintiff offered evidence tending to prove that the cost of the material and labor in the construction of the switch was thirteen hundred and six and twenty-three one-hundredths dollars. Defendant offered no evidence and moved the court to nonsuit plaintiff which nonsuit was denied. Plaintiff then asked the following declaration of law:

"The court declares the law to be that the provision in paragraph 13 of the contract between plaintiff and the Jefferson Stone Company, providing that in case of failure of said stone company to ship sufficient stone from its quarry, as in said article provided, then said stone company shall and will reimburse and pay to said railway company the full amount expended for labor and materials in the construction of the tracks referred to in said contract, is in the nature of a penalty, and not of liquidated damages, and the burden of proving the actual damages rests on plaintiff.

"And, further, the court declares that plaintiff has proved no actual damage."

Both instructions were refused. The court found for plaintiff in the full amount claimed by the petition, $1,306.23 and interest.

After an unsuccessful motion for new trial defendant appealed.

*Chester H. Krum, T. A. Russell* and *Fred Wislizeneus* for appellants.

(1)   The cost of the switch is a penalty.   The plaintiff's recovery should be limited to the damages resulting from the breach of the bond.   Gower v. Saltmarsh, 11 Mo. 271; Basye v. Ambrose, 28 Mo. 39; Hamaker v. Schroers, 49 Mo. 408; Potter v. McPherson, 61 Mo. 240; Cochran v. Railroad, 113 Mo. 359; Sedgwick on Measure of Damages, secs. 396, 399 and 406.   (2)   The condition of the bond was not broken. The freight exceeded the sum paid out for labor and new material.   The value of old material, which had long been in use by the railway company, which was merely laid on the stone company's land, with title continuously in the railway company, and the right in the latter to remove the material whenever the stone company defaulted on its contract, is not part of the cost of the switch.

No brief furnished for respondent.

BLAND, P. J.—The defendant's contention is, that clause thirteen of the contract in respect to the payment of the cost of the switch in the event of the stone company's failure to furnish the agreed amount of freight, should be construed as a penalty.   In construing the contract with a view to ascertain whether the amount stipulated to be paid is a penalty or liquidated damages, the subject-matter of the contract, the language employed and the intention of the parties should be considered. The situation of the stone company was this; it owned a stone quarry that was valueless for want of transportation facilities, but which would be valuable if its products could be transported, by rail from the grounds, to market.   The plaintiff owned and operated a nearby railroad that reached markets

both north and south; to connect with this road would afford the stone company the desired facilities for transportation. It does not appear from the evidence that the switch would have been of any special value to plaintiff's main line and that the only profits it might in the future derive from it would be the freights on the products of the quarry, and we think we may justly conclude that the switch was constructed for the especial benefit of the stone company and not as a valuable accessory to the plaintiff's road when disconnected from the stone quarry. It was not ascertainable that the stone company could or would furnish sufficient freight to justify the plaintiff to incur the expense of constructing the switch; to provide against the contingency of a loss on its construction, paragraph thirteen was incorporated in the contract to insure the plaintiffs against such loss in the event the enterprise of the stone company should prove to be a failure. The business did fail and the question is, should the stone company, under its agreement, pay not only for the labor in the construction of the switch, but also for the rails, crossties and other materials used in its construction, all of which it is expressly stipulated by the contract shall remain the property of the plaintiff? If so, the contract is a hard one, but courts can not relieve parties of a hard contract merely because it is hard, unless the sum agreed to be paid on the occurrence of its breach, can be construed as a penalty. Mere improvidence does not of itself afford a sufficient ground for such relief.

II. The evidence does not authorize us to pronounce the contract unconscionable and to afford equitable relief on that ground. There is no pretense that the defendants did not enter into the contract freely and voluntarily with all the facts before them, and it must therefore be construed according to its true meaning and intent to be ascertained from the language employed to express that intent. Chase v. Allen, 13 Gray 42;

Cushing v. Drew, 97 Mass. 445; Streeper v. Williams, 48 Pa. 450. But one breach of performance is alleged, and but one is provided for by clause thirteen of the contract, hence, the case does not come under the rule announced in Morse v. Rathbun, 42 Mo. l. c. 601, that "where an agreement contains several distinct covenants, on which there may be divers breaches, some of an uncertain nature and others certain, with one entire sum to be paid on the breach of performance, the contract will be construed as a penalty, and not as liquidated damages:" followed by this court in Brevard v. Wimberly et al., not yet reported; but does come under the rule announced in Hamaker v. Schroers et al., 49 Mo. 406, where it was held that, "Where the parties have agreed that in case one of them shall do a stipulated act, or omit to do it, the other party shall receive a certain sum as a just, appropriate and conventional amount of damages sustained by such act or omission, courts will not interfere to grant relief, but will deem the parties entitled to fix their own measure of damages, provided that the damages do not assume the character of gross extravagance, or of wanton and unreasonable disproportion to the nature and extent of the injury, and whether a sum inserted in an instrument to be paid in case of breach, is to be regarded as a penalty or liquidated damages, must be determined by the nature of the contract and its provisions." If from the nature of the contract the actual damages sustained can be "computed with certainty by definite rules" the courts will construe the sum stipulated to be paid as a penalty, regardless of the fact that the parties may have called it liquidated damages; but on the other hand, if the actual damages can not be "calculated with any degree of certainty" or "are not susceptible of definite ascertainment," and the "intention of the parties is plain and palpable" and the amount is not "disproportionate to the probable damages," the court will construe it to be liquidated damages. May v. Craw-

ford, 150 Mo. 504.

The actual damages sustained by the plaintiff, on account of the breach of performance of the contract alleged, are not definite and certain, nor are they "susceptible of definite ascertainment" and we think the intention of the parties is "plain and palpable" that the amount agreed on should be the measure of the plaintiff's damage for a breach of the performance of the requirements of paragraph thirteen of the contract. We can not say that the amount agreed to be paid for a breach of performance of paragraph thirteen is disproportionate to the probable damages, in view of the fact that the switch was constructed for the especial accommodation and use of the stone company and was of no appreciable value to plaintiff after the stone company ceased to ship quarry products over it.

The judgment is affirmed.    All concur.