CHARLES J. MENGES, Respondent, v. THE MILTON PIANO COMPANY, Appellant.

St. Louis Court of Appeals, October 21, 1902.

**Contract:** LIQUIDATED DAMAGES: PENALTY: CONSTRUCTION OF CONTRACT: POLICY OF THE LAW. Whether a contract provides for liquidated damages is to be determined not alone by its words, nor altogether from the intention of the parties, as disclosed by the instrument and the circumstances attending its execution; but in some measure, too, by the actual justice of the case. The law has a policy of its own in this matter which must be satisfied, whether parties have it in mind when they contract or not, and that policy may be stated thus: a stipulation for liquidated damages, however positively assented to, will be construed as one for a penalty if it is necessary to do so in order to avoid extortion and oppression; but if it is not oppressive in view of the circumstances, it will be enforced as the compensation an aggrieved party is entitled to receive, even if it is probably greater than the loss he sustained by the other party's breach, if his actual damage can not be measured with approximate certainty.

Appeal from St. Louis City Circuit Court.—*Hon. Selden P. Spencer,* Judge.

AFFIRMED.

*Lee W. Grant* and *Pierre B. Kennedy* for appellant.

(1) Just compensation for the injury sustained is the principle at which the law aims, and the parties will not be permitted by express stipulation to set this principle aside. Meyer v. Hart, 40 Mich. 517; Hahn v. Horstman, 12 Bush 249. (2) The sum named must not only be reasonable in itself, but the parties themselves must intend it to be regarded as liquidated damages irrespective of the terms employed. People v. Railroad, 76 Cal. 29; Perzell v. Shook, 53 N. Y. Sup. Ct. 501. (3) The question is whether the amount ostensibly awarded for the breach is or is not reasonable, appropriate and just, regard being had to the nature of the stipulation for the breach of which the agreement provides. May v. Crawford, 142 Mo. 390. (4) If the

law of compensation is the true rule to be applied as the measure of damages, then surely if the plaintiff has not been injured at all by the breach of the contract he should not receive an exorbitant sum—$1,400—for its breach. Therefore, defendant's instruction number two, which placed this issue squarely before the jury, ought to have been given, as was well said in an early case. Basye v. Andrews, 28 Mo. 39.

*Christian F. Schneider, Kurt Von Reppert* and *G. N. Fickeissen* for respondent.

(1) Under this testimony it was proper and right for the court below to construe the contract as it did and direct the jury by its instruction to assess plaintiff's damages in the sum of $100, the amount named in the contract, for each and every piano sold by the defendant in violation of said contract between the sixth day of July and the twenty-fourth day of October, 1900. May v. Crawford, 142 Mo. 390; Connelly v. Priest, 72 Mo. App. 678; Cochran v. Railroad, 113 Mo. 363; Morse v. Rathburn, 42 Mo. 594; 1 Sedgwick on Damages (8. Ed.), 404, 405, 406; Miller v. Smith, 67 S. W. 429. (2) The contention that the letter of defendant, dated June 25, 1898, should have been admitted, is not well taken, for the reason that it was incompetent, irrelevant and immaterial, said letter having been written prior to and was merged in the contract, which was dated July 6, 1898. 1 Sedgwick on Damages (8 Ed.), p. 581, par. 406, which says: "The court will not go outside of the contract to ascertain the intention of the parties entering into it." Wilhelm v. Eaves, 14 L. A. R. 298; Southern on Damages, 480; Keeble v. Keeble, 85 Ala. 562. (3) Moreover, it is a well-established principle of law that antecedent correspondence referring to a matter which is afterwards put in the shape of a contract, is incompetent. Tracy v. Iron Works, 104 Mo. 193; Boyd v. Paul, 125 Mo. 9; Rucker v. Harrington, 52 Mo. App. 481; Warren v. Mayer Mfg. Co., 161 Mo. 112.

GOODE, J.—Charles J. Menges and the Milton Piano Company executed a contract containing these clauses:

"Said Charles Menges shall have the sole and exclusive sale and agency for the said Milton pianos or any piano sold or manufactured by the said Milton Piano Company, in and for the city of St. Louis, in the State of Missouri, and the city of East St. Louis, in the State of Illinois, for so long a period as the said Menges shall buy or sell for said Milton Piano Company not less than fifteen pianos per year, each year to begin on the first day of June of each year, and terminate on the first day of each June following. The first year to commence and be calculated from the first day of June, 1898, and the contract to be in force and take effect from that date.

"Said piano company, in consideration of the premises, doth further agree and stipulate and does hereby bind itself and its successors to pay to said Charles Menges the sum of one hundred dollars for each and every breach of the above contract that may be caused or made by said Milton Piano Company, its officer, servants or agents."

To carry out his agreement Menges advertised in his territory the pianos manufactured by the appellant, exhibited samples of them during two years at the St. Louis Exposition at considerable expense, employed agents to sell, and in other ways expended time and money to bring the instruments before the people, and render them popular, as that brand of pianos was a novelty in the St. Louis market and a new kind is hard to sell.

Menges bought the required number of instruments from the appellant, paying one hundred and one hundred and ten dollars each for them and selling them at prices ranging from one hundred and seventy-five to two hundred and twenty-five dollars.

After making the contract, the Milton Piano Company appointed an agent to sell pianos in East St. Louis and itself sold some to Balmer & Weber and the Kiesel-

horst Piano Company, dealers in St. Louis, to be sold on the guarantees of those dealers under false brands which concealed the fact that they were manufactured by the Milton company.

Some excuses were offered by the appellant for these apparent breaches of its agreement; but as the finding of the jury was against its defense, the validity of the judgment is to be tested by the trial court's rulings on the instructions submitted; and as the case is presented to this court, those rulings need be considered only with reference to the force of the stipulation that the appellant should pay Menges one hundred dollars for every breach of the contract it committed, which the learned circuit judge construed to call for liquidated damages in the event of a breach, and so charged the jury.

Whether a contract provides for liquidated damages or a penalty is to be determined not alone by its words, nor altogether from the intention of the parties, as disclosed by the instrument and the circumstances attending its execution; but in some measure, too, by the actual justice of the case. The law has a policy of its own in this matter which must be satisfied, whether parties have it in mind when they contract or not, and that policy may be stated thus: a stipulation for liquidated damages, however positively assented to, will be construed as one for a penalty if it is necessary to do so in order to avoid extortion and oppression; but if it is not oppressive in view of the circumstances, it will be enforced as the compensation an aggrieved party is entitled to receive, even if it is probably greater than the loss he sustained by the other party's breach, if his actual damage can not be measured with approximate certainty. This leaves the question in each case somewhat to the discretion of the court, and that result comes from the law having borrowed this relief from equity tribunals, which first modified agreements for unconscionable forfeitures, in the exercise of a jurisdiction whose principles were originally applied largely

according to the chancellor's discretion and sense of right.

When the contract between the parties to this action was made, it must have been plain to both of them that its value to the respondent would depend almost entirely on the respect shown by the appellant to the exclusive privilege accorded to the respondent to handle its pianos in the designated localities, and that it was important to effectually protect him against a disregard of his exclusive right and provide a means to fix the compensation he should receive if it was disregarded; for he was bound to incur expense and devote time to build up a trade, and his loss could not be readily or accurately estimated if the company treated the territory granted to him as still free for sales to other customers.    These considerations may be assumed to have been in the minds of the contracting parties and to have caused the insertion of the clause which designated a sum to be paid by the appellant for every breach it might commit.

The sum fixed is no more than seemed necessary to bind the company to good faith; in fact was too little to do so, as the event has shown; while as damages to Menges for the broken covenant, it is not at all excessive, considering the profit he made on his sales, and should be regarded, therefore, as the proper measure of his damages.

In support of this ruling we refer to the cases of St. Louis, Iron Mountain & Southern Ry. v. The Jefferson Stone Co., 90 Mo. App. (St. L.) 171, and May v. Crawford, 150 Mo. 504, where the subject of liquidated damages and penalty is treated at large, as it is in numerous decisions whose conclusions uphold the construction we have given to the contract in suit, and whose arguments and learning would render further observations superfluous.

The judgment is affirmed.

*Bland, P. J.,* and *Barclay, J.,* concur.