## L. DYER, Respondent, v. W. L. COWDEN, Appellant.

### Springfield Court of Appeals, March 3, 1913.

1. **SALE: Statements of Seller: As Facts or Mere Opinions.** Statements as to the quantity of a stock of goods, if made positively, as of one's own knowledge, by one apparently in a position to know the truth, which are relied upon by the person to whom made, are statements of facts and not mere expressions of opinion.

2. ————: **Relied on by Purchaser.** The merchandise in question was contracted for on an invoice and not in bulk, and the purchaser had a right to rely upon any statements made by the seller in regard thereto, and if those statements were false, the plaintiff (seller) cannot recover.

3. **FRAUD: Deception by: Question for Jury.** It is a question for the jury whether the defendant was deceived or not. If there is any evidence tending to show misrepresentations and that the defendant acted upon such misrepresentations in entering into the contract and not on his own judgment, the plaintiff's (seller's) knowledge and intention become material questions which should be left to the jury, and the court commits error in taking such a case from the jury.

4. ————: **Motive and Intent.** Where actual fraud is charged, the question is largely one of motive and intent, and whether there is fraud or not is a question for the jury.

5. **VERDICT: Peremptory Instruction: Issues of Fact for the Jury.** The court should not give a peremptory instruction to find for the plaintiff if there is any evidence in the case, which, if true, would establish any one of the good defenses pleaded in the answer, but the issues should be submitted to the jury.

6. ———: **Verdict Directed for Plaintiff: Effect of.** In directing a verdict for the plaintiff the court considers only the evidence favorable to the defendant; admits all of his evidence to be true; gives to his evidence every reasonable intendment and construes in his favor every reasonable inference that can be deduced from his evidence.

7. **PLEADING: General Denial.** Under a general denial, the plaintiff cannot urge a waiver on the part of the defendant of fraud or misrepresentation and a ratification of the contract.

8. **CONTRACT: Breach of: Liquidated Damages.** Where a stock of goods amounted to nine thousand dollars and the same was locked up for inventory for five days at a season of the year when trade is best, the sum of three hundred dollars is not an unreasonable amount for a breach of the contract of sale.

Appeal from Greene County Circuit Court, Division Number Two.—*Hon. Alfred Page,* Judge.

REVERSED AND REMANDED.

*Albert S. Cowden, Neville & Gorman* for appellant.

(1) If there was oral evidence tending to show that the amount of the stock of goods was misrepresented by plaintiff to defendant and that defendant acted upon said misrepresentations, he was entitled to have that evidence passed on by a jury and the court erred in taking the case from the jury. Owens v. Rector, 44 Mo. 389; 2 Thompson on Trials (2 Ed.), secs. 1947-1949. (2) Where, in a law case, there is any evidence, which if true, would establish any one of the defenses pleaded in the answer, it should be submitted to the jury and it is error for the court to give a peremptory instruction. Johnson v. Grayson, 230 Mo. 380. (3) Misrepresentations as to amount of property are sufficient to avoid a contract and are

not like opinions as to value. Judd v. Walker, 215 Mo. 312; Leicher v. Keeney, 98 Mo. App. 394. (4) Defendant had a right to rescind the contract within a reasonable time after he discovered the fraud and the question of what was a reasonable time under the circumstances in this case was a question of fact for the jury. 2 Thompson on Trials (2 Ed.), sec. 1541. (5) A material misrepresentation of fact by which a party is induced to enter into a contract which works an injury is ground for a rescission even though no fraud accompany the statement. Yeater v. Hines, 24 Mo. App. 619; McLennon v. Seibel, 135 Mo. App. 26. (6) When waiver is relied upon it must be pleaded. Keeny v. McVoy, 206 Mo. 42.

*Howard Ragsdale* and *Patterson & Patterson* for respondent.

(1) The $300 item mentioned in the contract should be taken and considered as liquidated damages. Where the parties to a contract, in which the damages to be ascertained growing out of it are uncertain in amount, mutually agree that a certain sum shall be the damages in case of a failure to perform, in language plainly expressive of such agreement and when the intention is plain and palpable, there is no law to justify the courts in giving the contract a different construction. Lawson on Contracts, p. 510; Morse v. Rathbun, 42 Mo. 594; Hamaker v. Schoers, 49 Mo. 406. (2) Defendant seeks to avoid liability for the breach of his contract upon the ground that plaintiff represented to him that the stock of merchandise in question would not invoice more than approximately $7000. This at most was a mere expression of opinion on the part of plaintiff and a representation as to a future event, and, therefore, constitutes no defense to plaintiff's action. 1 Jaggard on Torts, p. 577; Estes v. Shoe Co., 155 Mo. 577. (3) Defendant admits that he was

informed by plaintiff that the stock of merchandise would probably invoice about $8500 before he had plaintiff to close his store for the purpose of taking the invoice. This amounted to a ratification of the contract after the discovery of the alleged fraud and defendant cannot be heard to complain that the contract was induced by fraud. Hart v. Handlin, 43 Mo. 175; Estes v. Reynolds, 75 Mo. 565; Taylor v. Short, 107 Mo. 384; Robinson v. Siple, 129 Mo. 222.

STATEMENT.—The plaintiff brought this action for damages alleging defendant's failure to comply with the terms of his written contract to purchase a stock of goods, and prayed for judgment in the sum of three hundred dollars, the amount specified in the contract as liquidated damages for failure to perform. The defendant in his answer admitted the execution of the contract and his failure to comply, but denied that plaintiff was damaged in any way. He also set up as a defense that he was induced to sign said contract on the strength of certain representations made to him by the plaintiff in regard to the amount the stock of goods would invoice; that he told plaintiff he would not execute the contract if the goods exceeded approx imately $7000; that plaintiff assured defendant that he knew approximately the value of the stock and falsely represented that it would not be more than $200 in excess of $7000; that at the time plaintiff made such representation he knew that the stock would amount to about $9000; and that, relying on such rep resentation defendant was induced to enter into the contract; that the goods on invoice actually amounted to $8975, and that the peculiar terms of the contract made it hazardous for defendant to trade for a stock greater in value that $7000 in round numbers. The plaintiff's reply was a general denial.

After all the defendant's evidence had been intro duced, and after plaintiff's evidence in rebuttal and

defendant's rejoinder thereto, the court gave an instruction directing the jury to return a verdict for the plaintiff assessing the damages at $300. Judgment was rendered accordingly, and after unsuccessful motions for a new trial, and in arrest of judgment, defendant perfected an appeal to this court.

The evidence shows that the defendant, a resident and merchant of Springfield, Missouri, having been engaged in the merchandise business for about twelve years, owned an equity in some real estate in Springfield; that through a real estate broker, one Nash, he met the plaintiff, a resident and merchant of Ash Grove, Missouri, and that defendant and Nash went to Ash Grove for the purpose of examining plaintiff's stock of goods. The defendant was in plaintiff's store from in the morning until after supper, and according to his testimony the plaintiff explained the costmark on specific articles but did not give it to him in writing, his testimony being that his investigation went more to the quality than the quantity of the stock of goods. After supper a trade was generally agreed upon, but no written contract was entered into until November 22, 1911, a few days later. The following provisions of the contract are all that are necessary to be set forth in order to determine the case:

"Upon the completion of said invoice of said goods, wares and merchandise, whatever said goods, wares and merchandise and fixtures and furniture, with the said two per cent added as aforesaid for carriage, shall total over and above the sum of $4500 shall be paid to the second party as follows: The first party agrees to and hereby obligates himself to turn over to the second party the daily sales of said stock each day, reserving therefrom only the reasonable running expenses of said business, and the first party agrees to permit the second party or some one by him, the second party, employed, to remain in said store for the purpose of inspecting the amount of such daily

sales, and for that purpose shall have the right to examine the books of the said first party to ascertain the amount of such daily sales, and to receive such daily sales, less said running expenses, for which the said first party agrees to pay to such second party, or his agent, the sum of $1.50 per day.

"And it is further agreed and understood by and between the parties hereto that the whole of the difference between the total of the invoice price of said goods, wares and merchandise and furniture and fixtures of said second party, with the said two per cent added for carriage, and the sum of $4500, the equity of the said first party in said Springfield property conveyed by him to said second party, shall be paid in full to the second party by January 1, 1912. It is further agreed and understood by and between the parties hereto that said stock of goods and fixtures conveyed to the first party by the second party as aforesaid shall not be removed from their present location until paid for in full as afore described.

"It is further agreed and understood by and between the parties hereto that in event either party shall fail to do and perform the agreements and covenants herein contained shall forfeit and pay to the other party the sum of $300 liquidated damages sustained by such party.

"It is further agreed and understood by and between the parties hereto that in event the first party shall fail or refuse to make full payment of the amount due on said invoice between said invoice of said goods of second party and the $4500 paid by first party by January 1, 1912, then in that event the said stock of merchandise and fixtures thereto belonging conveyed hereby by second party to first party and all that may be added thereto by the first party shall revert to the second party and he shall be entitled lawfully to the possession thereof on demand.

"It is further agreed and understood by and between the parties hereto that said invoice shall be commenced and continued until completed as soon as convenient and to begin November 27, 1911."

The plaintiff introduced the contract in evidence and proved the breach, offering no proof of his actual damages but relying upon the clause in the contract providing for liquidated damages. His evidence consisted of his own testimony, and that of his attorney, Mr. Ragsdale, and of his clerk, Mr. Collins. However, defendant admitted the execution of the contract and the breach, so that the plaintiff on his theory had made out a prima facie case.

In order to determine whether the trial court committed error in directing a verdict for the plaintiff, a careful review of the defendant's evidence is necessary.

The defendant testified that on the first day he was in the store and before any contract was entered into he had a conversation with plaintiff relative to the value of the stock of goods, as to what it would invoice, and that at first plaintiff said he didn't know exactly what it would be, but that in the afternoon of that day he told defendant the stock would go around $7000—might miss that a little either way; that plaintiff said he had the principal part of the invoice and that he kept a merchandise account and that the stock would go approximately $7000, and that that sum would not miss it either way more than $200, which statement, defendant says, was made by the plaintiff on two occasions that day; that when he asked plaintiff how much it would invoice, plaintiff told him he kept a merchandise book and that he knew approximately what it would be. Defendant further testified that plaintiff introduced him to his clerk, Mr. Collins, and informed him that Collins had been in the stock nineteen or twenty years and knew about as much about the stock of goods as did the plaintiff; that in

answer to a question as to what the stock would in-
voice, Collins informed the defendant that it would go
around $6500—maybe $6700. That defendant told
plaintiff positively he would not consider anything
above $7000, approximately. Defendant also testified
that it was impossible for him to estimate the stock
within from two to three thousand dollars. That he
never formed any basis from his own knowledge or
inspection of the goods what the invoice would amount
to. That relying on what plaintiff and Collins had
told him, they being familiar with the stock and having
the invoices and the merchandise book, he believed the
stock would run from $6700 to $7000, and that he relied
upon these representations in making the contract.
That when they were figuring on what the carriage
would be, the plaintiff and defendant both figured that
the three per cent on the amount of the invoice would
run $210. That on or about the twenty-second day of
November, about two days after defendant's visit to
Ash Grove to see the stock, Mr. Nash brought the con-
tract to him, signed by the plaintiff, and that he, the
defendant, signed it and put it in his pocket and told
Nash to tell the plaintiff he had signed it and would
be there on the twenty-seventh to begin the invoice.
That he went on the twenty-seventh, taking with
him a man to help invoice, and taking also his deed
and abstracts necessary to carry out his part of the
trade, and that he found the plaintiff expecting him
and ready to begin invoicing, having employed a man
for that purpose. That before he went from the train
to the store he went to the office of plaintiff's attorney,
Mr. Ragsdale, and there signed the other copy of the
contract.

The defendant also testified at length concerning
what occurred in the store that morning after he had
signed the other copy of the contract and before the
invoice was begun. He stated that soon after he
reached the store and before any thing was done, plain-

tiff called him aside and said to him, among other things of the same character, "This deal has been started into on misrepresentations to you;" and that when he asked plaintiff why he had not told him this prior to his signing the contract, the plaintiff's answer was, "Mr. Nash told me not to tell you that;" that in discussing with plaintiff what Collins had said about the stock not running over $7000, plaintiff remarked, "I will bet Nash has had hold of the old man."

Other facts deemed essential to a determination of the case will be found stated in the opinion.

## OPINION.

FARRINGTON, J.—The burden of proving fraud inducing the contract was of course on the defendant, the party asserting it, and when at the close of the evidence in the case the court gave a directed verdict for the plaintiff, it amounted to the sustaining of a demurrer to the defendant's evidence. It is as if the court had said: Looking to your evidence alone and admitting to be true everything you have said and giving every inference that can be deduced from your testimony a fair construction in your favor and giving your testimony every reasonable intendment in order to ascertain your right of defense claimed in your answer, still you have not shown a state of facts from which a reasonable inference can be deduced sufficient to uphold a verdict in your favor (Jackson v. Hardin, 83 Mo. 186; Powell v. Railroad, 76 Mo. 80; Reichenbach v. Ellerbe, 115 Mo. 588, 22 S. W. 573); no inference could be drawn from your testimony, considered in its most favorable aspect, by a reasonable man which would establish your defense of fraud inducing the contract; in other words, admitting the truth of all the evidence which has been given in your favor together with all such inferences and conclusions as

168 Mo. App. 42

can reasonably be drawn therefrom (Wainright v. Missouri L. & M. Co., 156 Mo. App. 512, 518, 137 S. W. 53), there is not enough competent evidence to sustain a verdict in your favor should the cause be submitted and the jury so find.

The rule has long been settled in this State that on a demurrer to the evidence, the court must indulge every inference of fact in favor of the party offering the evidence which a jury might indulge with any degree of propriety. [Wilson v. Board of Education, 63 Mo. 137; Heine v. Railroad, 144 Mo. App. 1. c. 447, 129 S. W. 421.] And, as said in the case of Johnson v. Grayson, 230 Mo. 1. c. 394, 130 S. W. 673, "Where there is in a law case evidence which, if true, would establish any one of the good defenses pleaded in the answer, the court should not give a peremptory instruction to find for plaintiff, but should submit the issue to the jury. [Jenks v. Glenn, 86 Mo. App. 329; Dunbar v. Fifield, 85 Mo. App. 484; Hahn v. Bradley, 92 Mo. App. 399; Hugumin v. Hinds, 97 Mo. App. 346.]" The soundness of the rules announced by our own courts is attested by similar decisions in other jurisdictions. Thus it is held that where the evidence is conflicting, and the court is moved to direct a verdict, all facts and inferences in conflict with the evidence against which the action is to be taken must be eliminated entirely from consideration, and totally disregarded, leaving solely the evidence for consideration which is favorable to the party against whom such action is leveled. [Harris v. M., K. & T. Ry. Co., 24 L. R. A. (N. S.) 858; Cooper v. Flesner, 23 L. R. A. (N. S.) 1180.] And, as said in Edmisson v. Drumm-Flato Com. Co., 73 Pac. 958: "While there is some conflict in the testimony, the rule on demurrer is that the court cannot weigh conflicting evidence, but the court will in such cases treat the evidence which is most favorable to the party offering the demurrer as withdrawn. . . . A demurrer to the evidence ad-

mits all the facts which the evidence in the slightest degree tends to prove, and all the inferences which may be logically and reasonably drawn from the evidence.'' When a party demurs to the evidence, no evidence introduced by him can be considered on the demurrer. [6 Ency. of Pl. and Pr. 445.] By demurring to his adversaries' evidence he waives his own. [38 Cyc. 1542; St. Clair v. Railway Co., 29 Mo. App. 76, 87.] This being true, this court must not search the defendant's testimony for inconsistencies that could be construed in plaintiff''s favor (6 Ency. of Pl. and Pr. 445), and must not look at all to the plaintiff's evidence to sustain the judgment.

That an issue of fact was raised as to whether the stock of goods had been represented to defendant as not amounting to over approximately $7000 is disclosed by the record, which shows that the plaintiff introduced evidence in rebuttal denying that statements attributed to him by the defendant were made and denying that conversations detailed by defendant ever took place; and if the representation which defendant swears was made was of a fact and was not a mere expression of opinion (which will receive attenton later), the determination of such question should have been left to the jury. The court must submit an issue of fact, no matter how clear the testimony may be. [Johnson County Sav. Bank v. Redfearn, 141 Mo. App. 386, 125 S. W. 224.] Where actual fraud is charged, the question is very largely one of motive and intent; and the question of fraud or no fraud will, therefore, in most cases, be a question for the jury. [2 Thompson on Trials (2 Ed.), sec. 1945.]

For the purpose of this appeal, it must be admitted—because it is sworn to by the defendant as a fact—that plaintiff told him that he (plaintiff) had the merchandise account and the invoices and that the stock would not miss $7000 on an invoice, $200 either below or above; and, that plaintiff's clerk, Mr. Collins

(who was introduced to defendant by plaintiff as a man who was all right and who had been there in the store for nineteen or twenty years, and who knew almost as much about the stock as plaintiff himself, and who was directed to show defendant through the store and tell him anything he wished to know), told the defendant in answer to a question that the stock would not run over $6700. And defendant testified that relying on these representations he was induced to and did enter into the written contract.

As was held in the case of McBeth v. Craddock, 28 Mo. App. 380, where a party, by his statements and asseverations, purposely induces one to rely upon their truth, and forego other sources of information, he cannot escape liability by then suggesting further inquiry. It is a question of fraudulent intent and good motive, for the jury to determine.

If the statements sworn to by the defendant as having been made, were made, we believe he was justified in relying upon them for the reason that plaintiff had owned the stock of goods for a number of years and kept the invoices and merchandise account, which, as the invoice disclosed, did reveal substantially what the stock amounted to. Plaintiff's statements, coupled with those of his highly-recommended clerk, would lead any reasonably prudent man to believe that they knew what they were talking about when they made these assertions. As was said by LAMM, J., in the case of Judd v. Walker, 215 Mo. 312, 338, 114 S. W. 979: ". . . it ought not to be held that trust cannot be put in a positive assertion of a material fact, known to the speaker and unknown to the hearer, and intended to be relied on."

But respondent contends that even admitting there is a conflict in the evidence raised by the testimony of the defendant, such conflict was not a question of fact as to what the stock of goods would invoice but merely an expression of an opinion.

In this, we cannot agree with the respondent. It will be noted that the stock of goods was not to be traded in bulk for the real estate of the defendant but was to be traded on the basis of taking an invoice to ascertain exactly what was in the stock and what would be the difference the defendant would have to pay the plaintiff over and above the value placed on said real estate—$4500. The case does not fall within the rule that a vendor has a right to "puff" his wares and rely on the principle of *caveat emptor,* because the parties had agreed on their trade and had fixed the value of the goods at the invoice price, plus carriage. The misrepresentation which the defendant contends was made was not a misrepresentation as to value but a misrepresentation as to the amount that the invoice would total. Indeed, in this case, we very seriously doubt that had it been a "lump sale" and had the plaintiff told the defendant his merchandise account and invoices showed that the stock would run $7000, and the fact developed afterward that the invoices and the merchandise account ran $2000 over $7000, such representation in that case would not be a "puffing" of the merchandise, but a representation of a material fact which did not exist. [Bower v. Fenn, 35 Am. Rep. 662; Cressler v. Rees, 20 Am. St. Rep. 691.] "On the other hand, however, statements as to the quality or quantity of real or personal property may be and often are statements of fact, and have frequently been held to constitute fraud. As a general rule, if they are made positively, as of his own knowledge, by one who is apparently in a position to know the truth, and are relied upon by the person to whom they are made, they are not to be treated as mere expressions of opin-ion." [14 Am. and Eng. Ency. Law, 44; Buford v. Caldwell, 3 Mo. 477; Glaspie v. Keator, 56 Fed. 1. c. 210; Chase v. Broughton, 54 N. W. 44.] In Judge GOODE's opinion in the case of Lewis v. Muse, 130 Mo. App. l. c. 200, 201, 108 S. W. 1107, this language is

used: "If defendant swore truly, he relied entirely on plaintiff's statement as to the number of acres of corn. He was unfamiliar with the acreage of the land and plaintiff was familiar with it as owner. Hence defendant cannot be charged with lack of ordinary prudence, nor can knowledge be imputed to him because by proper diligence, he would have obtained it. . . . In cases like this one the representation of quantity is treated as an implied warranty, for a breach of which damages are recoverable." In the case now under consideration, any "puffing" would go to the per cent on the dollar that the defendant would pay for the goods on invoice, and it appearing that he agreed to pay one hundred cents plus two per cent for carriage, the gross sum that the stock would run merely depended on adding the items taken at the value at which defendant agreed to pay for them determined from the cost mark on the goods. In other words, $7000 would not fix the value of the stock of goods because that was to be fixed by the invoice, which, according to defendant's theory, might run $200 over or $200 below $7000. His contention is that the plaintiff represented to him that the stock taken at the invoice price would not amount to over approximately $7000.

The testimony of the defendant is that he made no effort whatever to. ascertain the amount the stock would run, but as to that relied on the representations, and that such examination as was made by him was as to whether the goods were marked correctly and as to their quality, and if his story is to be taken as true, this would be the reasonable course he would take on an investigation. It is also in evidence that in the space of time consumed by defendant in looking through the stock it would have been impossible for him to have determined within several thousand dollars what the stock would invoice. The goods, having been contracted for on invoice and not in bulk, we

think, brings this case within the same rule that applies to a sale of land where there is a representation as to the number of acres, where it is bought by acreage, and where the total price to be paid for the tract is to depend upon the number of acres contained therein, and in such a case, where there is a statement made misrepresenting the number of acres, even though the purchaser goes upon the land and views it and even though he could have gone to the recorder's office and ascertained the true acreage, he has a right to rely on the statements made by the seller, and if they are false, he can recover. [Judd v. Walker, supra.]

The question as to whether the defendant in this case was deceived or not is one for the jury. "If there was evidence tending to show that the situation of the property was misrepresented, and that the defendant, in his purchase, acted upon those misrepresentations, and not upon his own judgment, the question of knowledge and intention on the part of the seller becomes a material one, and must be left to the jury; and if the court took the case from the jury because in its opinion such knowledge was not proved, it committed an error." [Owens v. Rector, 44 Mo. 389. See, also, Leicher v. Keeney, 98 Mo. App. 394, 72 S. W. 145.]

Respondent also contends that even though the representation was of a material fact and not a mere expression of opinion, still the defendant's plea of fraud would avail him nothing for the reason that he waived any fraud practiced on him and ratified the contract after the discovery of the alleged fraud. There are two answers to this contention:

(1)   At the time the defendant swears that plaintiff showed him the merchandise book, which disclosed that the stock would run over $8700, the contract had been signed three or four days by both parties and retained by the defendant, and the notice of the fraud

did not come to him until after he had signed the other copy of the contract in Mr. Ragsdale's office at Ash Grove on the morning of November 27 when defendant went there to begin the invoice. At the time the notice of the fraud was imparted to defendant, the status of the parties was fixed under their contract, and according to plaintiff's position as told by the defendant, the defendant was then bound to pay him three hundred dollars if he failed to take the stock of goods and it should invoice approximately $7000, or if he should fail to take the stock of goods and it should invoice approximately $9000. If defendant's statements are to be taken as true—and on that the jury and not the court must pass—defendant had been led to believe by the plaintiff that the stock would not run over approximately $7000 at one time, which was prior to signing the contract, and at the later time he was led to believe by the plaintiff that the stock would run approximately $9000, which was after he had entered into the contract and his rights and duties had become fixed thereby. He could do nothing in order to protect himself, if his story be true, other than to ascertain what the stock would run, and the evidence shows that after the invoice was made they extended the items and added them within a reasonably short time and as soon as defendant ascertained that the stock actually invoiced the amount that it did, he refused to perform. It is true, he made several suggestions as to relieving the situation in some way which were not agreed to by the plaintiff, and this, if it shows anything, would merely indicate a desire on the part of the defendant to not back out of the trade entirely but try to consummate a deal along the lines he understood when the contract was entered into.

(2) As a further answer to this contention, the plaintiff is in no position to urge a waiver and ratification for the reason that the same was not pleaded in the reply (which was merely a general denial).

[Keeney v. McVoy, 206 Mo. 42, 59, 103 S. W. 946; Cooper v. Flesner, 23 L. R. A. (N. S.) 1180.]

In viewing this entire question of the direction of the verdict for the plaintiff and the question of fraud raised in this record, it might not be amiss in passing to judgment to say that in a given case, even though the evidence preponderates for one party or another, still if there is any substantial evidence amounting to more than a mere scintilla which does raise an issue of fact, the trial courts and the appellate courts must leave that issue to the determination of the tribunal appointed by law to weigh the evidence and judge the credibility of the witnesses. And it is with even greater caution that they should proceed where a verdict has been directed for the plaintiff, because, in cases where the trial court indicates that a peremptory instruction will be given for the defendant, the plaintiff may in the discretion of the trial judge adduce further evidence in support of his cause of action, or, after the peremptory instruction is given, take a nonsuit and thus be enabled to come again into court for the enforcement of his alleged rights; but the defendant has no option or election where the verdict is directed in favor of the plaintiff and against the defendant; he can only stand and deliver, and his only remedy is appeal.

In view of the fact that this case is to be subject to retrial in the circuit court, it will be necessary for us to pass upon the question raised by counsel in their briefs as to what the measure of damages is to be under this contract. Appellant contends that the $300 item mentioned in the contract should be construed as a penalty and not as liquidated damages. Whether or not a stipulation in a contract is for a penalty or for liquidated damages is a question of law and is not for the jury to pass upon. [May v. Crawford, 150 Mo. 504, 51 S. W. 693.] A stipulation to pay a fixed sum in a contract as damages to the aggrieved party will

be construed by the courts as liquidated damages and so enforced, provided the sum fixed is not out of proportion to the presumable loss and does not amount to extortion or oppression [Menges v. Milton Piano Co., 96 Mo. App. 283, 70 S. W. 250; St. Louis, I. M. & S. Ry. Co. v. The Jefferson Stone Co., 90 Mo. App. 171.] It was held in the case of Sun Printing Co. v. Moore, 183 U. S. 642, 46 L. Ed. 366, that where the parties to a contract in which damages growing out of a breach are uncertain in amount mutually agree that a certain sum shall be paid in case of a failure to perform and in language plainly expressive of such agreement, it would be unsound for a court to say they intended something else.

In the case under consideration, the plaintiff's stock of goods amounted to approximately $9000, and was locked up for about five days during the inventory at a season of the year when trade is best. It would be difficult to compute just how much profit plaintiff actually lost, to say nothing of the customers he may have lost by reason of the closed doors and the implied advertisement of his going out of business. The sum of $300 is a very reasonable amount, and as the parties fixed it by contract, it should not be disturbed.

For the reasons herein appearing, the judgment is reversed and the cause remanded. *Robertson, J.*, concurs. *Sturgis, J.*, concurs, but expresses no opinion as to the $300 being a penalty of liquidated damages.